UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 14-10082-RWZ


SHANE MOFFAT

v.

DEPARTMENT OF CORRECTION, *et al.*


MEMORANDUM OF DECISION

July 10, 2015


ZOBEL, D.J.

 Plaintiff Shane Moffat brings this action under the Civil Rights Act, 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and Mass. Gen. Laws. ch. 265 §§ 37, 39, for alleged direct and retaliatory violations of his rights under the First, Eighth, and Fourteenth Amendment to the United States Constitution. Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## I. Facts

 Shane Moffat ("Moffat"), is an inmate at MCI-Cedar Junction serving a life sentence, but at all times relevant to the complaint he was incarcerated at Souza-Baranowski Correction Center ("SBCC"), a maximum security prison located in Shirley, Massachusetts. He alleges that the Massachusetts Department of Correction and the other defendants conspired to operate a "rogue[1] disciplinary system" using "pod bosses" and

---

[1] Consistently misspelled "rouge" in plaintiff's documents and filings.

"peacekeepers," and facilitating the trafficking of illegal narcotics in the state's prisons. He cites Massachusetts Senate Bill 2125, Chapter 244 of the Acts of 2012[2] as a part of this illicit system.  He gives no further explanation of the basis of these beliefs, or any further details of who is involved, what the system does, or when, where, why, or how this alleged system operates.  When Moffat filed grievances complaining of these "rogue disciplinary systems" on several occasions, see e.g., Amended Complaint ("Am. Compl.") ¶ 26, 27, 28, 29, 34, 44-45, Ex. H, L, 96, Ex. BB, various prison officials followed up with him seeking details to help address his concerns, but he refused to cooperate with investigators on multiple occasions. Am. Compl. ¶ 33, Ex. B, ¶ 36, Ex. C.

Moffat is a member of the Rastafari faith and adheres to a strict vegetarian diet. Am. Compl., ¶ 23.  He is afforded access to a strict vegetarian religious diet pursuant to the Department of Corrections ("DOC")'s Religious Programs and Services regulation, 103 CMR 471.00, et seq..  Under the Standard Operation Procedure for Special Diets ("SOP") outlined in the regulations, an inmate must present his identification card and sign for the diet at every meal.  SOP, Part VIII.  When an inmate approved for such a meal fails to take it or takes a mainline meal, a staff member is required to submit an incident report documenting the matter.  SOP, Part IX.  If an inmate receives three such incident reports in a 30-day period, he may be removed from the special diet.  SOP, Part X.  He may, however, reapply for resumption thereof after 30 days.  SOP, Part XII.

On March 20, 2013, Moffat was advised that due to three incident reports indicating

---

[2] Available at https://malegislature.gov/Laws/SessionLaws/Acts/2012/Chapter244 . Notably absent from the law are the words "pod", "boss", or "peacekeeper."  Section 23 authorizes the use of "FDA approved, nonnarcotic opioid antagonist therapies for opioid-dependent offenders leaving correctional facilities and transitioning to community-based treatment programs."  Section 24 directs the study of "treatment programs and services available within the Massachusetts correctional system for offenders dealing with substance abuse and opioid dependency issues."

he had failed to take or sign for the vegetarian diet three times in March 2013, he would be temporarily removed from the diet but could reapply for access the next month (April). Am. Compl. ¶ 47, Ex. M.  On March 28, 2013, he submitted grievance #65310 seeking reinstatement to the vegetarian diet.  Am. Compl. ¶ 48.  On April 19, 2013, Moffat reapplied for access to the vegetarian diet which request was approved. Am. Compl. ¶ 49, Ex. N.

On June 6, 2013, Moffat was advised that due to three more incident reports for failure to take the vegetarian diet three times in the prior 30 days, he would be again removed from the special diet pursuant to the SOP. Am. Comp. ¶ 52, Ex. O.  He appealed from that decision and, on June 17, 2013, he was reinstated.  Am. Compl.  ¶¶ 53, 56, Ex. P.

On September 20, 2013, Moffat was involved in an altercation with Corrections Officer Deveneau on the recreation deck of the H-2 housing unit of SBCC.  Plaintiff was placed into restraints by other corrections officers who responded to the scene and escorted him to the Health Services Unit ("HSU"), where he remained until September 26, 2013. Am. Compl. ¶¶64-74.  On September 30, 2013, he submitted grievance #68682 demanding the return of his sneakers or their replacement, as he had been informed they were lost.  On January 2, 2014, that grievance was denied because his sneakers had been found.  Am. Compl., Ex. Z.

## II.  Analysis

### A. Motion to Amend (Docket #59)

Plaintiff first filed his complaint on January 2, 2014.  Docket # 1.  He amended the original complaint on March 19, 2014.  Docket # 8.  On September 19, 2014, defendants

moved to dismiss the complaint, Docket # 53, which plaintiff opposed on October 14, 2014. Docket # 58.  On October 17, three days after filing his opposition to the motion to dismiss, plaintiff filed his second motion to amend the complaint to add a single claim, Count V, for violation of his due process rights. Docket # 59.   He specifically alleges that various officers and officials of the DOC violated his due process rights by the filing of false reports.

Leave to amend should be freely given, but should be denied when, among other things, amendment would prove futile or the defendants would be substantially prejudiced. See Hatch v. Department of Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001) (denial of motion to amend appropriate as long as the record "evinces an arguably adequate basis for the court's decision, e.g., futility").   Here, defendants would suffer substantial prejudice given the full briefing of the motion to dismiss. Albertini v. Summit Technical Services, Inc., 287 F.Supp.2d 92, 95 (D. Mass. 2003) (prejudice to opposing party grounds for denial of leave to amend).   The proposed amendment is supported only by a single conclusory allegation and is substantively futile.   United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) ("the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."); see Dias v. Duval, 59 F.3d 164 (1st Cir. 1995) (quoting Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988)) ("prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest").   And, as will be fleshed out below, the proposed amendment addresses none of the alleged defects in the currently operative

complaint.  For all of these reasons, plaintiff's motion for leave to amend (Docket # 59) is DENIED.

### B.  Motion to Dismiss (Docket # 53)

I now turn to defendants' motion to dismiss the complaint as first amended. Whether a complaint should survive a motion to dismiss  under Fed. R. Civ. P. 12(b)(6) depends upon whether the pleading satisfies the "plausibility" standard set forth in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim is plausible on its face if it raises a right to relief beyond a speculative level by pleading ... 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Silvestri v. Smith, No. CIV.A. 14-13137-FDS, 2015 WL 1781761, at *6 (D. Mass. Apr. 17, 2015) (quoting Iqbal, 556 U.S. at 678).  And, while the court will generally accept all well-pleaded factual allegations in a complaint as true and draw all reasonable inferences in a plaintiff's favor, id., it will disregard any "legal conclusion[s] couched as ... fact" or "[t]hreadbare recitals of the elements of a cause of action." Ocasio–Hernadez v. Fortuno–Burset, 640 F.3d 1, 12 (1st Cir.2011) (quoting Iqbal, 556 U.S. at 678.).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Perry v. Spencer, No. CIV.A. 12-12070-LTS, 2015 WL 628538, at *2 (D. Mass. Feb. 12, 2015).

Although plaintiff delineates his claims in four separate counts, the exact boundaries of each claim as laid out are nearly impossible to follow.  I proceed instead thematically, addressing the substance of his claims overall in groups.

### 1. Retaliation Claims

"Inmates face a high burden to sustain a trialworthy retaliation claim. To prevail on a retaliation claim, an inmate must establish, [among other things], that he would not have suffered the adverse action "but for" the prison officials' retaliatory motive." Brown v. Corsini, 657 F. Supp. 2d 296, 304-05 (D. Mass. 2009). Moffat asserts he was removed from the strict vegetarian special diet on two occasions in the Spring of 2013, and was assaulted on September 20 of that year, in retaliation for his First Amendment activity investigating, grieving, and generally complaining about the alleged existence of "rogue disciplinary systems" in SBCC. These claims fail for a simple reason: the complaint fails to plead any plausible connection between any particular instances of protected activity and the alleged retaliatory incidents.

Moffat has been leveling these charges since at least June 15, 2012, including grievances on August 10, 2012, October 3, 2012, and February 5, 2013. The first alleged retaliation[3] did not occur until March 20, 2013, the day before his February 5 grievance was denied. He made no official complaints between the March 20 and the June 6 removals from the special diet, and both removals were, within a short period, rectified through the prison's internal processes. Plaintiff alleges the September 20, 2013, assault was further retaliation, but does not link it to any particular activity, and does not allege any further retaliation after he filed another grievance addressing this same issue on November 13, 2013.

Plaintiff also acknowledges that he did, in fact, fail to sign for his meals. See Am. Compl., Exhibit N (implying he was fasting and thus elected not to sign for the meals on

---

[3] Moffat was previously removed from the meal plan for failing to sign for his meals in violation of the SOP on August 28, 2012, but he does not allege this was retaliatory in his complaint.

at least one of the occasions he failed to sign); id., Exhibit Q (noting he failed to sign for three meals because he was on cell restriction).  These admissions torpedo his claims that the removal was retaliatory since they show compliance with the SOP, which is a facially neutral regulation linked to the legitimate penological interest of cost saving.

Plaintiff relies on three things outside his own *ipse dixit* regarding the existence of the alleged "rogue disciplinary systems": (1) Massachusetts Acts of 2012, Chapter 244, § 23 and 24; (2) judicial opinions from the 1990s and 2000s referring to "pod boss" and "peacekeeper systems" in prisons in California, Tennessee, and other states (but not Massachusetts); and (3) a document titled "Souza-Baranowski Correctional Center United Intelligence Report" purporting to be from February 16, 2013 (Am. Compl., Exhibit AA). The former two are entirely irrelevant to this matter, and the third is provided with no explanation as to its origin or authenticity.  I appreciate that one predisposed to believe the existence of the alleged conspiracy could construe Exhibit AA as supporting the complaint's fantastic allegations, but such support does not appear by drawing any *reasonable* inference.

### 2. Free Exercise Claims

Moffat also alleges that his removal from the special meal list, even if not retaliatory, infringes his right to free exercise of religion in violation of the First Amendment of the United States Constitution and the RLUIPA.  RLUIPA prohibits state governments from placing a "substantial burden" on the religious exercise of inmates unless the government demonstrates that the burden furthers a compelling government interest and is the least restrictive means of furthering that interest.  42 U.S.C. § 2000cc-1(a).  A substantial burden includes a rule or regulation which compels the prisoner to engage in "conduct that

seriously violates [his] religious beliefs." <u>Holt v. Hobbs</u>, 135 S. Ct. 853, 862, 190 L. Ed. 2d 747 (2015); <u>see Hudson v. Dennehy</u>, 538 F. Supp. 2d 400, 411 (D. Mass. 2008) <u>judgment entered</u>, No. CIV.A.01-12145-RGS, 2008 WL 1451984 (D. Mass. Apr. 11, 2008) <u>aff'd sub nom. Crawford v. Clarke</u>, 578 F.3d 39 (1st Cir. 2009) (refusal to provide Halal menu to Muslim inmates substantially burdens plaintiff's exercise of his religious beliefs by creating pressure on plaintiff to consume meals that do not conform with his understanding of the requirements of Islamic law.).

Unlike the situation in <u>Hudson v. Dennehy</u>, in this case the DOC did not refuse to provide Moffat with his requested religious diet. It supplies him with the requested diet so long as he signs for his meals in conformance with the SOP, which requirement he does not allege itself violates his religious beliefs. Merely having to sign for your meals cannot constitute a substantial burden in the absence of some reason signing would itself pose a substantial burden. Given that Moffat admits he was removed in compliance with the regulation, <u>see</u> Am. Compl., Exhibit N (implying he was fasting and thus elected not to sign for the meals on at least one of the occasions he failed to sign) and Exhibit Q (noting he failed to sign for three meals because he was on cell restriction), and given that he was reinstated to the program through appeal shortly after his removal, the complaint fails to state a cause of action under RLUIPA.

Because plaintiff has failed to allege the requisite  burden on his free exercise rights, his First Amendment claims fail as well. <u>See Hernandez v. Commisioner</u>, 490 U.S. 680, 699 (1989); <u>see also Turner v. Safley</u>, 482 U.S. 78, 84 (1987) (holding "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

### 3. Eighth Amendment Claims

The Eighth Amendment is violated by punishments which "involve unnecessary and wanton infliction of pain ... totally without penological justification." <u>Greg v. Georgia</u>, 428 U.S. 153, 173 (1976).  In order to succeed on his claims under a conditions of confinement theory, plaintiff must prove (1) that the conditions of his confinement constituted a serious deprivation of his basic human needs in contravention of contemporary standards of decency, <u>see</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); and (2) prison officials acted with deliberate indifference to the conditions of his confinement. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1990).  If Moffat bases his Eighth Amendment claims on his allegations of the alleged "rogue disciplinary system," it is facially implausible, and provides no facts concerning how such a system, if it exists, constitutes a "serious deprivation of his basic human needs in contravention of a contemporary standards of decency." <u>Rhodes</u>, 452 U.S. at 347.

Moffat also asserts Eighth Amendment claims stemming from alleged excessive force during the September 20, 2013, assault.  These claims fail because he does not allege sufficient facts to state a claim.  "After incarceration, only the 'unnecessary and wanton infliction of pain ' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." <u>Whitley v. Albers</u>, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986) (internal citations omitted).  Where a prison security measure is undertaken to resolve a disturbance, such as may have occurred in this case, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns

on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" <u>Whitley</u>, 475 U.S. at 320-21 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (CA2) (Friendly, J.), <u>cert. denied sub nom.</u> <u>John v. Johnson</u>, 414 U.S. 1033 (1973)).

Moffat's complaint alleges that defendant Deveneau struck him without "following guidelines or requestin[ing] compliance."  Am. Compl. ¶ 64.  He implies that this assault occurred without provocation or reason, but provides almost no factual context.  While the court must draw reasonable inferences in his favor, without more facts it cannot infer that defendant Deveneau assaulted plaintiff for no reason at all,[4] and without further specification of the extent of the harm or why force was used, Moffat's complaint fails to state a claim upon which relief can be granted, both as to defendant Deveneau and as to the other corrections officers named for their alleged failure to intervene.

### 4. Conspiracy Claims

Moffat's conspiracy claims fail because they do not allege sufficient facts to state a claim for relief.

### 5. Denial of Grievances

Mere denial of grievances does not violate any constitutional right in the absence of an underlying constitutional violation.  <u>See</u> <u>Grinter v. Knight</u>, 532 F.3d 567, 576 (6th Cir. 2008) (holding denial of prison grievance not enough to establish liability under 42 U.S.C.

---

[4] There is some authority for the proposition that an isolated act of violence by a guard does not constitute an Eighth Amendment violation.  <u>See</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 22 n. 2 (1992) (Thomas, J., dissenting) ("While granting petitioner relief on his Eighth Amendment claim, the Court leaves open the issue whether isolated and unauthorized acts are "punishment" at all. This will, of course, be the critical question in future cases of this type. If we ultimately decide that isolated and unauthorized acts are not "punishment," then today's decision is a dead letter. That anomaly simply highlights the artificiality of applying the Eighth Amendment to prisoner grievances, whether caused by the random misdeeds of prison officials or by official policy.")

§ 1983); <u>Gallagher v. Shelton</u>, 587 F.3d 1063, 1069 (10th Cir. 2009) (same); <u>Murphy v.</u> <u>Corizon</u>, No. 1:12-cv-00101-JAW, 2012 WL 3637902, at *8 (D. Me. 2012) (same).

### 6. State Law Claims

Plaintiff asserts claims under M.G.L. c. 265, §§ 37, 39.  These are criminal statutes, and provide no private right of action.  <u>See</u> <u>O'Neil v. Daimlerchrysler Corp.</u>, 538 F. Supp. 2d 304, 322 (D. Mass. 2008). The claims are DISMISSED.

## III.  Conclusion

Plaintiff's second motion to amend the complaint (Docket # 59) is DENIED.

Defendants' motion to dismiss (Docket # 53) is ALLOWED.[5]

Plaintiff's motions to appoint counsel (Docket # 69) and for an extension of time to serve summons (Docket # 73) are DENIED AS MOOT.

Defendant's motion for leave to file excess pages (Docket #55) is, reluctantly, ALLOWED.

Judgment may enter dismissing the complaint.


_____July 10, 2015_____          _____/s/Rya W. Zobel_____
DATE                                        RYA W. ZOBEL
                                     UNITED STATES DISTRICT JUDGE

---

[5] The complaint is also dismissed as against defendant Pamela O'Dell for the additional reason of improper service, pursuant to Fed. R. Civ. P. 12(b)(5).